UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONALD J. BARROSSE | * | CIVIL ACTION NO. 2:20-cv-02042 |
| | * | |
| Plaintiff | * | |
| | * | JUDGE WENDY B. VITTER |
| VERSUS | * | |
| | * | |
| HUNTINGTON INGALLS | * | MAG. JUDGE JANIS VAN MEERVELD |
| INCORPORATED, ET AL. | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SECOND SUPPLEMENTAL AND AMENDED COMPLAINT

Now into Court, through undersigned counsel, come the Plaintiffs, Lynn Barrosse, Raegan Holloway, and Makenzie Stricker, the spouse and children of the decedent, Ronald J. Barrosse, (hereinafter, referred to as "Plaintiffs"), whose names and residences are shown on Exhibit "A," which is attached hereto and incorporated herein, who file this, their Second Supplemental and Amended Complaint, which is restated in its entirety, as follows:

1.   Mr. Barrosse had substantial exposure to asbestos and asbestos-containing products sold, distributed, supplied, applied, removed, used, manipulated and/or maintained on the premises described in Exhibit "A."

2.   The Defendants, identified in Exhibit "B," are all either: (a) foreign corporations licensed to do and doing business in the state of Louisiana, (b) domestic corporations licensed to do business and doing business in the state of Louisiana, (c) individuals who are domiciled in this state, (d) individuals who are not domiciled in this state, or (e) foreign or alien insurers, that are liable to the Plaintiff for the claims asserted herein.

3.   Each Defendant corporation and/or its predecessor-in-interest is, or at times

material hereto, has been engaged in the processing, manufacturing, installation, removal, maintenance, sale, use and/or distribution of asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as "asbestos-containing products"), or held themselves out as manufacturers of such products or were professional vendors of such products.

4.  The death of Ronald J. Barrosse, on or about October 13, 2020, was due to or a consequence of his exposure to dust and fibers from asbestos and/or asbestos-containing materials, as a direct and proximate result of his exposure to asbestos products that were unreasonably dangerous per se, defective in composition or construction, defective in design, lacking suitable warnings or instructions concerning the hazards presented, as a result of negligent, willful, and/or reckless misconduct.   As a direct and proximate result of the delictual conduct of the defendants, the petitioners listed on Exhibit "A", have lost the love, affection, society, support, services and future earnings of the decedent and all other damages due pursuant to Louisiana Civil Code Article 2315.2, and assert this wrongful death action against the non-employer defendants, The Cajun Company, Eagle, Inc., Hopeman Brothers, Inc., The McCarty Corporation, Taylor-Seidenbach, Inc. and ViacomCBS, Inc., only.

5.  Pursuant to Fed. R. Civ. P. 25(a)(1), the petitioners listed on Exhibit "A," are the statutory survivors of the referenced decedent and hereby substitute themselves in the decedent's stead and assert thier survival action pursuant to Louisiana Civil Code Article 2315.1.

6.   Mr. Barrosse breathed (was exposed to) asbestos-containing products while working at the premises identified in Exhibit "A."  He also breathed (was exposed to) asbestos fibers away from these premises when asbestos fibers that had contaminated his work clothing were released from his clothing while in his car and at his home.

7.   More specifically, Mr. Barrosse had "off-site" exposures to asbestos, as follows:

a.   While working as an electrician onboard ships being constructed by Avondale at its Main Yard in Avondale, Louisiana from 1969 to 1977, Mr. Barrosse worked near other crafts, including insulators, who cut and installed asbestos insulation on high-temperature steam pipes throughout the ships.

b.   The insulators cut insulation with a saw, which created visible asbestos dust. Mr. Barrosse breathed that asbestos dust and it adhered to his clothing.  This occurred throughout the entire time Mr. Barrosse worked at Avondale.

c.   When the asbestos insulation was cut, debris fell to the ground, which stayed on the floor until one of the labor gangs swept it up.  Mr. Barrosse had to walk through these areas as he worked onboard the ships.  As he walked through these areas, asbestos fibers from the debris on the floors re-entrained into the air and adhered to his clothing.

d.   When ships were retrofitted, old asbestos insulation was stripped off pipes. This also created visible asbestos dust, which Mr. Barrosse breathed, and which adhered to his clothing as he worked aboard ships at Avondale.

e.   After work each day, when Mr. Barrosse left Avondale's premises, he breathed asbestos fibers that were released from his clothing in his car and in his home.

    f.  As a result, Mr. Barrosse's car and home become contaminated with asbestos fibers and became a recurring source of exposure to asbestos.

    g.  These "off-site" exposures to asbestos occurred throughout the entire time Mr. Barrosse worked at Avondale and were a significant part of his cumulative exposure to asbestos, which caused his mesothelioma and death.

8.    Mr. Barrosse has <u>not</u> asserted a Longshore and Harbor Workers' Compensation Act claim. Rather, he has elected to pursue concurrent state law remedies.

9.    In 1942, the federal government, pursuant to the authority granted by the Walsh-Healey Act, enacted "Basic Safety and Health Requirements" which required federal contractors to provide dressing facilities to their employees who were exposed to harmful dusts.

10.    In 1943, the Louisiana Sanitary Code set forth "Industrial Health Regulations" for the safe handling of asbestos.  These regulations required employers to provide dressing rooms to workers who were exposed to asbestos dust.

11.    In 1972, federal regulations promulgated pursuant to the Occupational Safety and Health Act of 1970 ("OSHA") required employers to implement a program of compliance which included special clothing, change rooms, clothes lockers, and laundering of asbestos-contaminated clothing when permissible exposure limits to asbestos were exceeded.

12.    Avondale did not provide Mr. Barrosse with dressing facilities or implement safety precautions to prevent off-site exposures to asbestos during the time he worked at Avondale.

13.    The conduct of each Defendant was a substantial contributing factor in causing

Plaintiff's injuries, such that all Defendants are liable jointly, severally, and in solido for all of the damages complained of herein.

VENUE

14.    The defendants, Eagle, Inc. and Taylor-Seidenbach, Inc. are domestic corporations with principal places of business located in Orleans Parish. Plaintiff was exposed to products, distributed and installed by the above-referenced defendants at the work sites listed herein. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

15.    Each of the defendants listed in Exhibits "B," contributed with Eagle, Inc. and Taylor-Seidenbach, Inc. to Plaintiff's exposure to asbestos at his work sites, including but not limited to, the exposure sites listed herein.  Each of these defendants is liable in solido, with Eagle, Inc. and Taylor-Seidenbach, Inc. to the Plaintiff.  Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

16.    Further, the insurance defendant, OneBeacon America Insurance Company, issued policies of comprehensive general liability insurance to defendants, Huntington Ingalls Incorporated's executive officers, including Hettie Margaret Dawes-Eaves, Edwin Hartzman and Henry "Zac" Carter, all of whom are deceased, who contributed to Plaintiff's exposure at Plaintiff's work sites, including but not limited to, the exposure sites listed herein. Hettie Margaret Dawes-Eaves, Edwin Hartzman and Henry "Zac" Carter were domiciled in Orleans Parish at the time of their death. As such, the insurance defendant is liable for the damages alleged against

Huntington Ingalls Incorporated's executive officers, including Hettie Margaret Dawes-Eaves, Edwin Hartzman and Henry "Zac" Carter, individually, jointly and *in solido.* In addition, pursuant to the Louisiana Direct Action Statute, La. R.S. 22:1269, venue is proper for these defendants.

<u>BACKGROUND</u>

17.   During Plaintiff's occupational exposure period, each of the defendants designed, tested, evaluated, packaged, furnished, stored, handled, transported, installed, used, supplied and/or sold asbestos-containing products, including, but not limited to the asbestos-containing products set forth below and identified herein:

| Defendants | Asbestos-Containing Products |
|---|---|
| Eagle, Inc. | Pipe insulation, block insulation, insulating cement, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Hopeman Brothers, Inc. | Micarta wallboard |
| The McCarty Corporation | Pipe insulation, block insulation, insulating cement, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Taylor-Seidenbach, Inc. | Pipe insulation, block insulation, insulating cement, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial, including asbestos-containing siding. |
| ViacomCBS, Inc. (f/k/a CBS Corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation | Micarta wallboard |

Each of the foregoing asbestos containing products was used at Decedent's jobsites listed herein where Decedent was exposed to such asbestos-containing products,

construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

18. When inhaled or otherwise ingested, asbestos, shortly after inhalation or ingestion, causes irreparable and progressive damage that can manifest itself as asbestos-related pleural diseases, asbestosis, lung cancer and mesothelioma.

19. Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to the Decedent, of the health hazards inherent in the asbestos-containing products they were selling or using. Instead of warning the Decedent and the general public about these dangers, the defendants ignored or concealed such information, or condoned such concealment.

20. In connection with his work at Decedent's jobsites listed herein during the exposure period, the Decedent was exposed to and inhaled or otherwise ingested significant quantities of asbestos having neither knowledge, nor reason to believe that these materials were dangerous.

21. As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos while working at the exposure sites listed herein, Decedent has received injuries, both physically and mentally, including, without limitation, malignant mesothelioma, which resulted in his death.

22. Because of the latency period of the above injuries and other injuries caused by asbestos and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiffs have only recently, within one year, discovered his injuries.

<u>COUNT ONE</u>

NEGLIGENCE
("Defendants" in this count mean Eagle, Inc.; Hopeman Brothers, Inc.;
The McCarty Corporation; Taylor-Seidenbach, Inc. and ViacomCBS, Inc.)

23.     The illnesses and disabilities of Decedent are a direct and proximate result of the

negligence of Defendants and/or its predecessor-in-interest in that said entities

produced, sold and/or otherwise put into the stream of commerce asbestos or

asbestos-containing products, which the Defendants knew, or in the exercise of

ordinary care, should have known were deleterious and highly harmful to

Decedent's health and well-being.  The Defendants were negligent in one, some or

all of the following respects, among others, same being the proximate cause of

Decedent's illnesses and disabilities:

a.      failing to timely and adequately warn Decedent of the dangerous

characteristics and serious health hazards associated with exposure to

asbestos and/or asbestos-containing products;

b.      failing to provide Decedent with information as to what would be

reasonably safe and sufficient wearing apparel and proper protective

equipment and appliances, if any, to protect Decedent from being harmed

and disabled by exposure to asbestos and/or asbestos-containing products;

c.      failing to place timely and adequate warnings on the containers of said

asbestos, or asbestos-containing products, to warn of the dangers to health

of coming into contact with said asbestos or asbestos-containing products

and/or machinery;

d.      failing to take reasonable precautions or exercise reasonable care to publish,

adopt and enforce a safety plan and/or safe method of handling, installing, and/or using or removing asbestos and/or asbestos-containing products; failing to develop and/or use a substitute material to eliminate asbestos fibers in the asbestos-containing products;

e.     failing to properly design and manufacture asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

f.     failing to properly test asbestos-containing products before they were released for consumer use; and

g.     failing to recall and/or remove from the stream of commerce said asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products.

<u>COUNT TWO</u>

NEGLIGENCE
AGAINST THE CONTRACTOR DEFENDANT
("Contractor Defendant" in this count means The Cajun Company
and Hopeman Brothers, Inc.)

24.   The Defendants contracted at the jobsites identified herein to perform certain activities at those jobsites prior to and/or during each Decedent's exposure period at each such jobsites.

25.   The activities conducted by the Defendants and/or their subcontractors included, but were not limited to, the application, demolition, displacement, disturbance, fabrication, installation, purchase, removal, repair, replacement, tearing out, and use of asbestos-containing products at, on and/or for the jobsites identified herein.

26.   The foregoing activities resulted in the release of substantial quantities of asbestos

dust into the work environment.

27.   Decedent was exposed to and inhaled substantial quantities of asbestos dust as a
direct and proximate result of the activities of the Contractor Defendants.

28.   The Contractor Defendants negligently performed and/or permitted their
subcontractors to negligently perform the foregoing activities in the following non-
exclusive particulars:

(a)   By creating a work environment laden with asbestos dust and an unhealthy
and unsafe place for Decedent to work;

(b)   By failing to provide warnings, or adequate warnings, to Decedent of the
dangers and risks posed by the asbestos in the atmosphere in which
Decedent worked; of the need for correct, adequate, and/or appropriate
safety equipment; of critical medical and safety information regarding
asbestos hazards in general and of hazards at the jobsites in particular; and
of the hazards created by the Contractor Defendants' activities;

(c)   By failing to test, or adequately test, the work environment for the presence
of toxic, hazardous and carcinogenic chemicals, particularly asbestos;

(d)   By failing to apprise Decedent of the need for periodic medical
examinations as a result of Decedent's exposure to asbestos created by the
Contractor Defendants' activities;

(e)   By failing to ventilate and/or properly ventilate the areas in which Decedent
performed activities, or otherwise provide a safe and suitable means of
eliminating the amount of asbestos dust in the air;

(f)   By failing to clean up and/or properly clean up the asbestos dust created by

the Contractor Defendants' activities;

(g)     By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as Decedent, who came into contact with asbestos dust as a result of the Contractor Defendants' activities;

(h)     By recklessly concealing from Decedent and negligently failing to provide critical medical and safety information to Decedent regarding the safety and health risks associated with the asbestos and asbestos-containing products;

(i)     By failing to adopt and/or failing to enforce safety rules after such rules were actually adopted;

(j)     By failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, occupational exposure to asbestos;

(k)     By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

(l)     By failing to supervise their operations and the operations of their subcontractors;

(m)     By commencing and continuing operations, which were under their control and supervision, when they knew or should have known that such operations would cause Decedent and co-employees to be exposed to asbestos, without protection, on a daily basis;

(n)     By failing to timely, adequately and safely remove asbestos hazards from the workplace;

(o)   By failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited the Occupational Safety and Health Act);

(p)   By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Contractor Defendants knew, or in the exercise of reasonable diligence should have known, were unreasonably dangerous, or unreasonably dangerous per se;

(q)   By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with their activities;

(r)   By failing to test or adequately test the materials with which they were working to determine the presence of asbestos;

(s)   By failing to purchase products and materials that did not contain asbestos;

(t)   By purchasing, using, applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that contained asbestos;

(u)   By failing to properly label products that they purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and tore out as containing asbestos; and

(v)   By conducting their activities through such other negligent acts or omissions, as may be revealed in discovery and/or proven at trial.

29.   The negligent acts outlined above were a substantial contributing factor in Decedent's exposure to dangerous and hazardous levels of asbestos, and resultant damages.

30.    The foregoing negligent acts of the Contractor Defendants were a cause-in-fact and proximate cause of the Decedent's injuries and damages.

31.    Additionally, the Contractor Defendants are liable for the acts of their subcontractors under the doctrine of *respondeat superior* and Louisiana Civil Code article 2320.

32.    Additionally, when the Contractor Defendants did not employ Decedent, Decedent was exposed to the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants that was in the care, custody and control of the Contractor Defendants and was unreasonably dangerous due to the presence of asbestos.

<u>COUNT THREE</u>

NEGLIGENCE AGAINST PREMISES OWNER AND EMPLOYER

("Defendants" in this count mean Huntington Ingalls Incorporated; and Lamorak Insurance Company, f/k/a OneBeacon America Insurance Company, as successor to Commercial Union Insurance Company, as the insurer of Huntington Ingalls Incorporated's executive officers, Hettie Eaves-Dawes, Edwin Hartzman, and Henry "Zac" Carter, all of whom are deceased)

33.    Huntington Ingalls, f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc. (hereinafter, "Avondale") is a privately-owned company that builds, repairs, and/or converts vessels, barges and/or tugs on its premises. In connection with this work, Avondale enters into contracts with both private owners and the government.

34.    From February 3, 1969 to June 10, 1977, Mr. Barrosse was employed by Avondale. As a direct employee of Avondale, he received instruction, direction, and/or supervision from Avondale and/or its executive officers.

35.    Decedent did not receive instruction, direction, and/or supervision from the United States Government or any other person or entity that could be deemed a federal officer.

36.    Whether the contracts were with private owners or the United States Government, Defendants had a same duty to protect its employees and provide a safe place for its employees to work.

37.    Nevertheless, Defendants failed to provide and/or ensure a safe workplace for their employees, including Mr. Barrosse, free of hazardous concentrations of asbestos and asbestos-containing dust.

38.    Plaintiffs are not alleging that Defendants are liable for the mere use of asbestos, but rather, Plaintiffs are alleging that Defendants are liable because of the *careless manner* in which they used asbestos and their failure to utilize safety measures, which Defendants were required to utilize under both federal and state law, and pursuant to the terms of their contracts.

39.    Avondale was contractually bound to comply with federal and state laws. Specifically, no federal officer directed Avondale to break the law, including the legal requirements under the minimum federal safety laws.

40.    The Walsh Healy Public Contracts Act ("Walsh Healy") and later, the Occupational Safety & Health Act ("OSHA"), specified that work be performed under circumstances that did not expose workers to hazardous or dangerous conditions. Some of the specific _minimum_ requirements for employers designed to protect employees from ordinary hazards, which Defendants failed to implement, include:

a.    local exhaust ventilation,

b.     enclosure of processes involving hazardous activity,

c.     isolation of dusty work,

d.     providing workers with respiratory protection,

e.     monitoring of the air for asbestos, and

f.     implementation of measures to prevent work clothes from contaminating street clothes.

41.    OSHA further made clear that these minimum standards would not displace state or local laws that provided stricter or more exacting standards, such as Louisiana's law that required Defendants to furnish employment that was reasonably safe for their employees.  Specifically, Louisiana law required Defendants to:

a.     furnish and use safety devices and safeguards;

b.     adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment; and

c.     do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.

42.    Further, asbestos was a hazardous dust that was regulated in Louisiana as early as 1943, when the Louisiana Sanitary Code set forth mandates for the safe handling of asbestos, including mandatory air monitoring.

43.    Defendants  and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Decedent by negligently hiring, delegating, training, administering, supervising and

performing duties owed individually and/or delegated to them, or by failing to hire, delegate, train, administer, supervise or perform duties owed individually and/or delegated to them; and Defendants' breach of duty directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Decedent.  Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Decedent's asbestos-related injuries, illnesses and disabilities:

a.    in failing to provide adequate safety equipment, including, change rooms, and/or clothes for Decedent to change into while working at its premises;

b.    in failing to protect Decedent from any asbestos exposure;

c.    in failing to provide Decedent sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

d.    in failing to supervise or ensure compliance with applicable safety guidelines concerning exposure to asbestos or asbestos-containing products;

e.    in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Decedent's exposure to asbestos dust;

f.    in failing to properly perform safety inspections of the Decedent's workplace;

g.    in failing to properly perform engineering service, consulting and direction

of work involving the installation, removal, maintenance and/or disturbance of asbestos at Decedent's work site;

h.   in failing to comply with applicable State and Federal regulations regarding workplace exposure to asbestos; and

i.   in failing to properly perform or direct the removal and abatement of asbestos in place at Decedent's work site;

j.   in negligently failing to disclose, warn or reveal medical and safety information to Plaintiff regarding the hazards of asbestos;

k.   in failing to properly hire, delegate, train, administer and/or supervise employees to be in charge of providing a safe place to work;

l.   in failing to evaluate the workplace;

m.   in failing to properly implement control measures to reduce or eliminate harmful agents in the workplace, including asbestos; and

n.   in failing to properly train, educate and/or warn Mr. Barrosse of the dangers of asbestos.

44.   Defendants are liable to Plaintiffs for their failure to exercise reasonable care to protect Decent from the foreseeable dangers associated with exposure to asbestos. Defendants, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees.

45.   The Premise Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Decedent from said risk of harm. Defendants' failure to protect Decedent from known and/or foreseeable dangers constitutes negligence. Said negligence

was a proximate cause of Decedent, Ronald J. Barrosse, contracting malignant mesothelioma.

46. Plaintiffs allege negligent conduct and misconduct on behalf of Decedent's employer in failing to provide and/or ensure a safe workplace for their employees, free of hazardous concentrations of asbestos and asbestos-containing dust.

47. At various times, Decedent was employed by the Employer Defendants and during such time was exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by Defendants.

48. Each of the Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Decedent  by negligently hiring, delegating, training, administering, supervising and performing duties owed individually and/or delegated to them, or failing to hire, delegate, train, administer, supervise or perform their duties owed individually and/or delegated to them directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Decedent.  The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Decedent's asbestos-related injuries, illnesses and disabilities:

a.      in failing to provide adequate safety equipment;

b.      in failing to protect Decedent from any asbestos exposure;

c.      in failing to provide Decedent sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially

eliminate the effects of asbestos exposure;

d.      in failing to supervise or ensure compliance with safety guidelines
        concerning exposure to asbestos or asbestos-containing products;

e.      in failing to use or misusing equipment and instrumentalities within their
        control which were intended to minimize Decedent's exposure to asbestos
        dust;

f.      in failing to properly perform safety inspections of the Decedent's
        workplace;

g.      in failing to properly perform engineering services, consulting and
        direction of work involving the installation, removal, maintenance and/or
        disturbance of asbestos at Decedent's work sites;

h.      in failing to comply with applicable State and Federal regulations
        regarding workplace exposure to asbestos; and

i.      in failing to properly perform or direct the removal and abatement of
        asbestos in place at Decedent's work sites; and

j.      in negligently failing to disclose, warn or reveal medical and safety
        information to Decedent regarding the hazards of asbestos.

k.      in failing to properly hire, delegate, train, administer and/or supervise
        employees to be in charge of providing a safe place to work;

l.      in failing to evaluate the workplace;

m.      in failing to properly hire, delegate, train, administer and/or supervise
        employees to be in charge of providing a safe place to work;

n.      in failing to properly evaluate the workplace;

o.    in failing to properly implement control measures to reduce or eliminate harmful agents in the workplace, including asbestos; and

p.    in failing to properly train, educate and/or warn the Decedent of the dangers of asbestos.

49.    The negligence of Decedent's employers was a substantial factor and contributed in causing Decedent, Ronald J. Barrosse, to contract malignant mesothelioma.

COUNT FOUR

50.    Plaintiffs aver that Lamorak Insurance Company, f/k/a OneBeacon America Insurance Company, as successor to Commercial Union Insurance Company, issued policies of comprehensive general liability insurance to Avondale Industries, Inc.'s executive officers, Hettie Eaves-Dawes, Edwin Hartzman, and Henry "Zac" Carter, all of whom are deceased, that provided coverage for the causes of action asserted by Plaintiffs against Avondale Industries, Inc.'s executive officers, including Hettie Margaret Dawes-Eaves, Edwin Hartzman and Henry "Zac" Carter. As such, Lamorak Insurance Company f/k/a OneBeacon America Insurance Company, as successor to Commercial Union Insurance Company is liable for the damages alleged against Avondale Industries, Inc.'s executive officers, including Hettie Margaret Dawes-Eaves, Edwin Hartzman and Henry "Zac" Carter, individually, jointly and *in solido*.

COUNT FIVE

JOINT AND SOLIDARY LIABILITY

51.    Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Decedent.

52.     The actions of each of the Defendants are a proximate cause of Decedent's injuries. As a result, all Defendants are jointly and solidarily liable for the damage caused by their combined actions.

## DAMAGES

53.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease and other related physical conditions of Decedent.  Plaintiffs have been damaged in the following non-exclusive particulars:

(a)     Decedent has suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout his lifetime;

(b)     Decedent has incurred economic loss, including hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such loss and/or expenses in the future due to the progressively disabling character of asbestos-related lung disease and other related physical conditions from which he now suffers and will continue to suffer in the future;

(c)     Decedent suffered a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of asbestos-related lung disease and other related physical conditions;

(d)     Decedent suffered a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of asbestos-related lung disease and other related physical conditions;

(e)    Decedent was subjected to increased progression of his cancer all due to his exposure to asbestos by the named Defendants;

(f)    Decedent required domestic help and nursing care due to his disabilities and has been or will be required to pay for such domestic help and nursing service; and

(g)    Prior to the onset of his symptoms, Decedent was extremely active and participated in numerous hobbies and activities, and as a result of his illness, Decedent was prevented from engaging in some of said activities, which were normal to him prior to developing symptoms from asbestos-related lung disease.  Decedent was prevented from participating in and enjoying the benefits of a full and complete life.

54.    Plaintiffs filed suit within one (1) year of the date of discovering Decedent's asbestos-related conditions or the existence of any asbestos-related causes of action.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demands judgment against the Defendants, and each of them, jointly and severally, for general damages, special damages, for their costs expended herein, for prejudgment interest from the date of Plaintiffs' filing of the lawsuit and post judgment interest on the judgment at the rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,

WADDELL ANDERMAN, L.L.C.


By:   */s/ Jody E. Anderman*_____
       Cameron R. Waddell (Bar No. 24245)
       Jody E. Anderman (Bar No. 18764)
       2222 Eastgate Drive
       Baton Rouge, LA  70816
       Telephone: (225) 636-5639
       Facsimile: (225) 636-5209
       Counsel for plaintiff


## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th  day of February 2021, I electronically filed the foregoing

pleading using the CM/ECF system, which sent notification of such filing to all attorneys of record.


       */s/ Jody E. Anderman*_____
       JODY E. ANDERMAN