# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD BARROSSE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2042-WBV-JVM** |
| **HUNTINGTON INGALLS INCORPORATED, ET AL.** | **SECTION: D (1)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by defendants, Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc.) ("Avondale") and Lamorak Insurance Company (f/k/a OneBeacon America Insurance Company) (collectively, the "Avondale Interests").[1]  Plaintiffs oppose the Motion,[2] as does defendant, ViacomCBS Inc. f/k/a CBS Corporation f/k/a Viacom Inc., successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation ("Westinghouse").[3]  The Avondale Interests filed one Reply brief in response to the two Opposition briefs.[4]  After careful review of the parties' memoranda, the record, and the applicable law, the Motion is **GRANTED** and Plaintiffs' negligence claims against the Avondale Interests are **DISMISSED WITH PREJUDICE**.

---

[1] R. Doc. 86.  Lamorak Insurance Company was sued as the alleged insurer of Avondale Industries, Inc. and some of its executive officers.  R. Doc. 1-1 at p. 20; R. Doc. 77 at pp. 13, 20; R. Doc. 77-2.
[2] R. Doc. 101.
[3] R. Doc. 114.
[4] R. Doc. 124.

## I.    FACTUAL BACKGROUND

This is an asbestos exposure case.  On or about May 11, 2020, Ronald J. Barrosse filed a Petition for Damages in Civil District Court for the Parish of Orleans, Louisiana, against The Cajun Company, Eagle, Inc., Huntington Ingalls, Incorporated, The McCarty Corporation, OneBeacon America Insurance Company, and Taylor-Seidenbach, Inc.[5]  Barrosse alleged that he was exposed to asbestos and/or asbestos-containing products during the course of his employment at Avondale Industries, Inc. and Union Carbide between 1969 and 1979, and that such products were produced, installed, removed, maintained, sold, and/or distributed by the defendants.[6]  Barrosse alleged that he had suffered physical and mental injuries as a result of his exposure to asbestos, including malignant mesothelioma, which he "has only recently, within one year, discovered."[7]

Pertinent to the instant Motion, Barrosse alleged that he was exposed to asbestos while employed by Avondale Industries, Inc. and working as an electrician helper/electrician at Avondale Shipyard from February 3, 1969 through June 10, 1977.[8]  Barrosse testified that during his employment, he worked on commercial vessels and United States Navy Destroyer Escorts on Wet Dock 1 in the Main Yard at Avondale Shipyard.[9]  In the Petition, Barrosse asserted a negligence claim against the Avondale Interests for failing to provide and/or ensure a safe workplace for their

---

[5] R. Doc. 1-1, *generally*, and at p. 20.
[6] *Id.* at ¶ 4.
[7] *Id.* at ¶¶ 4-5, 12-14.
[8] *Id.* at ¶¶ 1, 4, 26 and at p. 19.
[9] R. Doc. 1-2 at pp. 2-6.

employees, including Barrosse, free of hazardous concentrations of asbestos and asbestos-containing dust.[10]

The Avondale Interests removed the matter to this Court on July 17, 2020, asserting that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1441 because the action arises "under the Constitution, laws or treaties of the United States," and under the federal officer removal statute, 28 U.S.C. § 1442, because Avondale Industries, Inc. and its executive officers were acting under an officer of the United States when it built Destroyer Escorts for the United States Navy pursuant to a contract between Avondale Industries, Inc. and the United States Government.[11] The Avondale Interests claim that Barrosse testified during his May 27, 2020 deposition that he was exposed to asbestos dust at Avondale Shipyard from working around other crafts using asbestos-containing insulation, cloth, and mastics while working aboard Destroyer Escorts built for the Navy.[12] Barrosse testified during his deposition that he was diagnosed with mesothelioma in early March 2020.[13]

Barrosse passed away on October 13, 2020,[14] and this Court allowed Barrosse's surviving spouse and children, Lynn Barrosse, Raegan Holloway and Makenzie Striker, to substitute themselves as plaintiffs in this case on January 5, 2021.[15] The Court also allowed Lynn Barrosse, Raegan Holloway and Makenzie Striker (collectively, Plaintiffs") to file a First Supplemental and Amended

---

[10] *Id*. at ¶¶ 25-41.
[11] R. Doc. 1 at Introductory Paragraph.
[12] *Id*. at ¶ 3 (*citing* R. Doc. 1-2 at pp. 2-15).
[13] R. Doc. 86-4 at p. 2.
[14] R. Doc. 67.
[15] R. Docs. 69 & 76.

Petition/Complaint (the "Amended Complaint") on January 5, 2021, in which Plaintiffs assert a survival action claim pursuant to La. Civ. Code art. 2315.1.[16]   In the Amended Complaint, Plaintiffs assert new allegations regarding Barrosse's off-site exposure to asbestos through his contaminated work clothes.  Plaintiffs allege that Barrosse's clothing was contaminated with asbestos dust while working at Avondale Shipyard, that he wore those clothes home and, as a result, was exposed to asbestos in his car and in his home through his work clothes.[17]  Plaintiffs further allege that, "Mr. Barrosse has <u>not</u> asserted a Longshore and Harbor Workers' Compensation Act claim."[18]   As in the original Complaint, Plaintiffs assert a negligence claim against the Avondale Interests, alleging that the Avondale Interests failed to provide and/or ensure a safe workplace for their employees, including Barrosse, free of hazardous concentrations of asbestos and asbestos-containing dust.[19]

The Avondale Interests filed the instant Motion for Summary Judgment on January 13, 2021, seeking dismissal of Plaintiffs' negligence claims against them based upon the exclusivity provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 905(a) and 933(i) (the "LHWCA").[20]  The Avondale Interests argue that the LHWCA preempts Plaintiffs' state law negligence claims against them because Louisiana law directly conflicts with §§ 905(a) and 933(i) and

---

[16] R. Docs. 76 & 77; R. Doc. 77 at ¶ 4.
[17] R. Doc. 77 at ¶ 6.
[18] *Id*. at ¶ 7 (emphasis in original).
[19] *Id*. at ¶¶ 32-49.
[20] R. Doc. 86.

frustrates the underlying purpose of those provisions of the LHWCA.[21]   Plaintiffs argue that their negligence claims are not preempted by the pre-1972 version of the LHWCA, which was in effect at the time of Barrosse's asbestos exposure, and that Barrosse's off-site exposure to asbestos is not covered by the LHWCA.[22]   Plaintiffs also assert that retroactively applying the 1972 amendments to the LHWCA to divest Plaintiffs of their negligence cause of action violates their due process rights.[23] Westinghouse likewise asserts that the Motion should be denied because the LHWCA does not preempt Plaintiffs' negligence claims against the Avondale Interests.[24]   In response, the Avondale Interests maintain that the LHWCA preempts Plaintiffs' negligence claims against them, and further assert that application of the LHWCA would not result in an unconstitutional divestment of Plaintiffs' rights.[25]

## II.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[26]   When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[27]   While all reasonable

---

[21] R. Doc. 86-1 at pp. 1-2.
[22] R. Doc. 101 at pp. 2-3.
[23] *Id.* at pp. 30-32.
[24] R. Doc. 114.
[25] R. Doc. 124.
[26] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[28]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[29]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[30]  The nonmoving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[31]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[32]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[33]

---

[28] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[29] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

[30] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[31] *Id.* at 1265.

[32] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[33] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

## III.   ANALYSIS

### A. The Applicable Version of the LHWCA.

The LHWCA is a federal workers' compensation statute that provides covered maritime workers with "medical, disability, and survivor benefits for work-related injuries and death."[34]   Before 1972, the LHWCA covered workers on "navigable waters of the United States (including any dry dock)."[35]   In 1972, however, Congress "extend[ed] the LHWCA landward beyond the shoreline of the navigable waters of the United States."[36]   In doing so, "the Longshoremen's Act became, for the first time, a source of relief for injuries which had always been viewed as the province of state compensation law."[37]

The parties in this case dispute whether the pre-1972 or post-1972 version of the LHWCA applies to Plaintiffs' negligence claims against the Avondale Interests. The Avondale Interests argue that the date of disease manifestation, not the date of exposure, determines which version of the LHWCA applies.[38]   Because Barrosse's mesothelioma manifested on March 17, 2020, the Avondale Interests claim the post-1972 version of the LHWCA applies and preempts Plaintiffs' negligence claims.[39]   In

---

[34] *MMR Constructors, Inc. v. Dir., Office of Workers' Comp. Programs*, 954 F.3d 259, 262 (5th Cir. 2020).

[35] *Id*. (*citing* 33 U.S.C. § 903(a) (pre-1972)).

[36] *Sun Ship, Inc. v. Pennsylvania*. 447 U.S. 715, 719, 100 S.Ct. 2432, 2436, 65 L.Ed.2d 458 (1980) (*citing* Pub. L. No. 92-576, 86 Stat. 1251, amending 33 U.S.C. § 903(a)).

[37] *Sun Ship, Inc.*, 447 U.S. at 719, 100 S.Ct. at 2436.

[38] R. Doc. 86-1 at p. 5 (citing *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1031 (5th Cir. 1985); *Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1290 (9th Cir. 1983); *SAIF Corp./Oregon Ship v. Johnson*, 908 F.2d 1434 (9th Cir. 1990); *Newport News Shipbuilding and Dry Dock Co. v. Harris*, 934 F.2d 548, 551-52 (4th Cir. 1991); *Ins. Co. of N. Am. v. U.S. Dep't of Labor, Office of Workers Comp. Programs*, 969 F.2d 1400 (2 d Cir. 1992); *Hulin*, 2020 WL 6059645, at *3-4; *Pitre v. Huntington Ingalls, Inc.*, Civ. A. No. 17-7029, 2018 WL 2010026, at *3 (E.D. La. Apr. 30, 2018)).

[39] R. Doc. 86-1 at pp. 5-6.

contrast, Plaintiffs argue that the LHWCA does not apply to Barrosse's off-site asbestos exposure, and that the pre-1972 version of the LHWCA applies to Barrosse's exposure at Avondale Shipyard because asbestos exposure claims are governed by the law in effect when the exposure occurred.[40]

In *Hulin v. Huntington Ingalls, Inc.*, another Section of this Court squarely addressed whether the pre-1972 or post-1972 version of the LHWCA applies in a factually similar asbestos exposure case.[41] The plaintiff in *Hulin* worked at Avondale Shipyard from January 1954 to May 1973, and alleged that he was diagnosed with lung cancer in July 2019 as a result of regular exposures to asbestos at Avondale Shipyard prior to 1972.[42] As in this case, the Avondale defendants in *Hulin* argued that the plaintiff's state law negligence claims were preempted by the LHWCA, and the parties disputed whether the pre-1972 or post1972 version of the LHWCA applied.[43] Citing the Fifth Circuit's decision in *Castorina v. Lykes Bros. S.S. Co.*, the *Hulin* court reasoned that, "Courts use the 'date of injury' to determine which version of the LHWCA applies."[44] The *Hulin* court further explained that, "In the context of long-latency diseases arising from asbestos exposure, the Fifth Circuit in *Castorina* held that manifestation, not exposure, determines the date of injury."[45]

---

[40] R. Doc. 101 at pp. 21-23 (citing *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016), overruled on other grounds by *Latiolais v. Huntington Ingalls, Incorporated*, 951 F.3d 286 (5th Cir. 2020); *Adams v. Ethyl Corp.*, 838 Fed.Appx. 822 (5th Cir. 2020)).
[41] Civ. A. No. 20-924, 2020 WL 6059645 (E.D. La. Oct. 14, 2020) (Vance, J.).
[42] *Id*. at * 1 (citations omitted).
[43] *Id*. at *2.
[44] *Id*. at *3 (citing *Castorina*, 758 F.2d 1025, 1029 (5th Cir. 1985)).
[45] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645 at *3 (citing *Castorina*, 758 F.2d at 1031).

In *Castorina*, the plaintiff's exposure occurred between 1965 and 1972, but his disease (asbestosis) manifested in 1979.[46]  Relying upon judicial authority from outside this Circuit, the Fifth Circuit held that, "[i]n cases of occupational diseases with long latency periods, the trend is clearly toward the application of the time of manifestation rule."[47]  The Fifth Circuit reasoned that, "The [LHWCA] is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself."[48]  The Fifth Circuit found additional support for its conclusion in the 1984 amendments to the LHWCA, evidencing Congress's intent in its express adoption of the manifestation rule.[49]  In the 1984 amendments to the LHWCA, Congress included the following definition of "injury" for occupational diseases:

> [I]n the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the disease . . . .[50]

The Fifth Circuit concluded that, "Although no such language appears in the 1972 amendments, it is clear that Congress has now adopted the 'date of manifestation' approach to determining the date of injury under the [LHWCA] . . . ."[51]

---

[46] *Castorina*, 758 F.2d at 1027-28.

[47] *Id*. at 1031 (quoting *Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1290 (9th Cir. 1983)) (internal quotation marks omitted).

[48] *Castorina*, 758 F.2d at 1031 (quoting *Grain Handling Co. v. Sweeney*, 102 F.2d 464 (2d Cir. 1939)) (internal quotation marks omitted).

[49] *Castorina*, 758 F.2d at 1031 (*citing* Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639, 1655 (September 28, 1984)).

[50] Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639 (September 28, 1984).

[51] *Castorina*, 758 F.2d at 1031.

Relying upon *Castorina* and the 1984 amendments, the *Hulin* court concluded that the plaintiff's injury in that case was deemed to arise on the date it manifested, which was 2019.[52]  As such, the *Hulin* court applied the LHWCA as it existed in 2019, the date of the plaintiff's injury.[53]   In this case, Barrosse's injury, malignant mesothelioma, manifested at the time of his diagnosis in March 2020.[54]  For the same reasons set forth in *Hulin*, this Court concludes that the post-1972 version of the LHWCA, which was in effect when the disease manifested, applies here.  The Court further rejects Plaintiffs' argument that more recent decisions from the Fifth Circuit, including *Savoie v. Huntington Ingalls, Inc.*[55] and *Adams v. Ethyl Corporation*,[56] require this Court to apply the version of the LHWCA that was in effect at the time of Barrosse's exposure.  The Court acknowledges that in *Savoie*, the Fifth Circuit held that:

> But as a survival action allows survivors to bring the claims the decedent could have asserted were he still alive, survival claims based on asbestos exposure are governed by the law in effect when the exposure occurred.  *See, e.g.*, *Rando v. Anco Insulations Inc.*, 16 So.3d 1065, 1072 (La. 2009) (explaining that "law effective on the date of [] significant exposure to asbestos" applies to claim alleging occupational asbestos exposure) (internal quotations omitted).  Because Savoie worked at the shipyard for almost half a century prior to Louisiana's abolition of strict liability, *that pre-1996 law governs*.[57]

Plaintiffs implore this Court to construe *Savoie* as holding that the version of the LHWCA on the date of exposure applies in this case.  That request ignores the

---

[52] *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-924, 2020 WL 6059645, at *3 (E.D. La. Oct. 14, 2020).
[53] *Id.*
[54] *See*, R. Doc. 101 at p. 1.
[55] 817 F.3d 457 (5th Cir. 2016).
[56] 838 Fed.Appx. 822 (5th Cir. 2020).
[57] 817 F.3d at 464 (emphasis added).

italicized language above, which is a clear reference to *state law* and Louisiana's abolishment of strict liability in 1996.[58]  It is evident to the Court that *Savoie* only addressed which version of Louisiana law, not which version of the LHWCA, applied to the plaintiff's claims in that case.

The Court likewise rejects as baseless Plaintiffs' argument that the Fifth Circuit held in *Adams v. Ethyl Corporation* that the law in effect at the time of exposure determines which version of the LHWCA applies to an asbestos claim.  The Court recognizes that the *Adams* Court held, "When a case involves long-latency occupational diseases like mesothelioma, the law in effect at the time of the exposure applies."[59]  As in *Savoie,* however, it is clear that in *Adams*, the Fifth Circuit was referring to the state law applicable to the strict liability claims at issue in that case. This is evident from the Fifth Circuit subsequently stating that, "Here, the applicable law is the Louisiana Civil Code article 2317 in effect between 1955 and 1959," the alleged dates of exposure.[60]  Thus, like *Savoie,* the Fifth Circuit in *Adams* only addressed which version of Louisiana law applied to the strict liability claims at issue, *not* which version of the LHWCA applied to such claims.

Nonetheless, the Court recognizes that the Fifth Circuit made additional comments in *Savoie* regarding the law applicable to asbestos exposure claims in the context of the defendants' burden of proving removal was appropriate under the

---

[58] *Id*. ("Strict liability was abolished in Louisiana in 1996.") (quotation marks omitted) (citing authority).

[59] 838 Fed.Appx. 822, 829 (5th Cir. 2020) (citing *Watts v. Georgia-Pac. Corp.*, 2012-0620 (La. App. 1 Cir. 9/16/13), 135 So.3d 53, 59).

[60] *Adams*, 838 Fed.Appx. at 825, 829.

federal officer removal statute, 28 U.S.C. § 1442(a)(1).   In determining whether removal was proper, the Fifth Circuit mentioned that the defendants had alleged two "colorable" federal defenses, the federal contractor defense and a preemption defense under the LHWCA.[61]   The Fifth Circuit, however, remanded the case for the district court to determine whether the defenses were colorable.   In doing so, the Fifth Circuit specified that, "As only the survival claims alleging strict liability satisfy the first two requirements of federal officer removal, it is only defenses to those claims – that is, *defenses existing under the law that existed when Savoie was exposed to asbestos –* that should be considered in determining whether the shipyard asserts colorable federal defenses."[62]   In a footnote, the Fifth Circuit further explained that,

> This means that Defendant's preemption defense is governed by the law at the time Savoie was exposed to asbestos, which occurred before the Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act.   *See* La.Rev.Stat. 23:1035.2 (providing that '[n]o compensation shall be payable in respect to the disability or death of any employee covered by . . . the Longshoremen's and Harbor Worker's Compensation Act, or any of its extensions . . .").[63]

The Court agrees with the *Hulin* court's assessment that the foregoing language constitutes non-binding dicta, as the *Savoie* court explicitly stated that it did not decide whether the defendants had asserted a colorable federal preemption defense.[64]   The Court further finds the footnote reference to the 1989 amendment to

---

[61] *Savoie*, 817 F.3d at 466 (citations omitted).
[62] *Id.* (emphasis added).
[63] *Id.* at n.6.
[64] *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-924, 2020 WL 6059645, at *3 (E.D. La. Oct. 14, 2020); *Savoie*, 817 F.3d at 466 ("As the district court never had the opportunity to consider these defenses are colorable, we will remand to allow it to do so in the first instance.") (citations omitted).

the Louisiana Worker's Compensation Act, which eliminated concurrent jurisdiction between that statute and the LHWCA, indicates that the Fifth Circuit was alluding to the applicable version of state law rather than the applicable version of the LHWCA.  Finally, the *Savoie* court does not mention its prior ruling in *Castorina*,[65] or otherwise suggest that the foregoing language represents a departure from the prior ruling.  It is well established that one Fifth Circuit panel cannot overrule another without an intervening change in the law.[66]  No party has provided, nor has the Court found, any support for the claim that the Fifth Circuit overruled its earlier decision in *Castorina* through the dicta in *Savoie*.

### B. Application of the Post-1972 Version of the LHWCA to Barrosse's Injuries.

Since 1972, the LHWCA provides workers compensation benefits to covered employees who meet the Act's "status" and "situs" requirements.[67]  To meet the status requirement, an employee must be "engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker . . . ."[68]  According to the Fifth Circuit, the status test is satisfied when the person is "directly involved in an ongoing shipbuilding operation."[69]  To meet the situs requirement, "disability

---

[65] *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1031 (5th Cir. 1985).

[66] *United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003); *Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001) (citing *Tucker v. Johnson*, 242 F.3d 617, 621 n.6 (5th Cir. 2001)).

[67] *New Orleans Depot Servs. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 389 (5th Cir. 2013).

[68] 33 U.S.C. § 902(3)

[69] *Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61, 62 (5th Cir. 1977) (per curiam) (quoting *Jacksonville Shipyards Inc. v. Perdue*, 539 F.2d 533, 544 (5th Cir. 1976)) (internal quotation marks omitted).

or death [must have] result[ed] from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."[70]

### 1. *Barrosse's Asbestos Exposure at Avondale Shipyard.*

The Avondale Interests argue that Barrosse's asbestos exposure at Avondale Shipyard satisfies the status test because he worked as an electrician on vessels being constructed and retrofitted.[71]   The Avondale Interests assert that Barrosse pulled cables and installed equipment throughout the vessels, contributing to the construction and repair process.  The Avondale Interests argue that this work clearly amounts to direct involvement in a shipbuilding operation and qualifies Barrosse as a "harborworker" under the LHWCA.  They note that the court in *Hulin* specifically recognized that the term "harborworker" in 33 U.S.C. § 902(3) includes electricians engaged in shipbuilding and repair.[72]  Plaintiffs do not dispute these assertions.  In fact, Plaintiffs do not address either the status or situs requirement of the LHWCA with respect to Barrosse's alleged exposure on the premises of Avondale Shipyard.[73] Plaintiffs assert only that Barrosse's off-site exposure does not meet the status or situs test, and dedicate the bulk of their Opposition brief to the issue of preemption.

---

[70] 33 U.S.C. § 903(a).
[71] R. Doc. 86-1 at p. 7.
[72] *Id*. at p. 8 (citing *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-923, 2020 WL 6059645, at *4 (E.D. La. Oct. 14, 2020)).
[73] *See, generally,* R. Doc. 101.

In doing so, Plaintiffs appear to concede that the situs and status requirements are met for Barrosse's exposure at Avondale Shipyard.

Barrosse testified during his video deposition that all of his work at Avondale Shipyard occurred at Wet Dock 1 in the Main Yard, where he initially worked on a commercial vessel before working exclusively on Destroyer Escorts for the United States Navy, which involved "mostly new construction."[74]   Barrosse testified that while working on Destroyer Escorts, which are approximately 450 feet long, he worked throughout the ships "pulling cable" and installing electrical equipment, explaining that he rolled the cable throughout the ship, sometimes bow-to-stern.[75] Based on these facts, and Plaintiffs' silence on the issue, there is no genuine dispute that Barrosse was a "harbor worker" under the LHWCA when the exposure at Avondale Shipyard occurred.[76]   The Court notes that in *Hulin*, the judge cited secondary authority indicating that the LHWCA's definition of "harborworker" includes electricians.[77]   Accordingly, the Court finds that Barrosse's asbestos exposure at Avondale Shipyard satisfies the LHWCA's status requirement.

The Court likewise finds that Barrosse's exposure at Avondale Shipyard satisfies the situs requirement of the LHWCA.  After the 1972 amendments, the situs test requires that the injury occur "upon the navigable waters of the United States

---

[74] R. Doc. 86-4 at pp. 6-10.

[75] *Id*. at pp. 14-15.

[76] *See, McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289 (5th Cir. 2008) ("Under the LHWCA, those persons injured while working in or near harbor facilities as longshoremen, shipbuilders, ship repairers, and various harbor workers, such as carpenters, cleaners, or painters are limited to compensation claims against their employers.")

[77] *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-923, 2020 WL 6059645, at *4 (E.D. La. Oct. 14, 2020) (*citing* 1 Robert Force and Martin J. Norris, *The Law of Maritime Personal Injuries* § 3:9 (5th ed.)).

(including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel)."[78]   Barrosse's asbestos exposure allegedly occurred while he was working on and around vessels being built or repaired at Avondale Shipyard.[79]   According to the Avondale Interests, Avondale Shipyard was always situated adjacent to a navigable water of the United States of America, the Mississippi River.[80]   Plaintiffs do not dispute that Barrosse's exposure occurred at Avondale Shipyard, or that Avondale Shipyard was always located along the Mississippi River.   This Court has repeatedly recognized that work performed on and around vessels being built or repaired at Avondale Shipyard satisfies the situs requirement.[81]   Here, Plaintiffs dispute the applicable version of the LHWCA, but not whether Barrosse's exposure satisfies the situs test of the LHWCA.[82]   As in prior cases, the Court finds that Avondale Shipyard, located on and adjacent to the navigable waters of the United States, is a covered situs under the LHWCA.

Based on the foregoing, the Court finds that Barrosse's asbestos exposure at Avondale Shipyard satisfies the status and situs requirements of the LHWCA.  Thus, Barrosse could have brought an LHWCA claim against the Avondale Interests.

---

[78] 33 U.S.C. § 903(a).

[79] *See*, R. Docs. 77 & 86-4.

[80] R. Doc. 86-1 at p. 8 (*citing* R. Doc. 86-5).

[81] *See, Pitre v. Huntington Ingalls, Inc.*, Civ. A. No. 17-7029, 2018 WL 2010026, at *3 (E.D. La. Apr. 30, 2018) (Vance, J.); *Hulin*, Civ. A. No. 20-923, 2020 WL 6059645, at *5.

[82] R. Doc. 101 at pp. 21-25.

## 2. *Barrosse's Off-Site Exposure in His Car and Home.*

To the extent Plaintiffs argue that Barrosse's off-site exposures from the asbestos dust on his work clothes are not covered by the LHWCA, the Court rejects that argument as unsupported by the evidence.  In *Dempster v. Lamorak Insurance Co.*, another Section of this Court recently addressed similar allegations that off-site exposure to asbestos dust carried home on an Avondale employee's clothing was not covered under the LHWCA.[83]  The *Dempster* court recognized that the LHWCA defines the term "injury" as "an accidental injury or death arising out of and in the course of employment,"[84] and that:

> To occur in the course of employment, an injury must occur at a time when the employee may reasonably be said to be engaged in the employer's business, at a place where the employee may reasonably be expected to be in connection with the employment, and while the employee was reasonably fulfilling the duties of his or her employment or engaged in doing something incidental thereto.[85]

The *Dempster* court further held that, "The words 'arising out of' instruct that the employment must have caused the injury."[86]  The plaintiff in *Dempster* argued that the off-site exposures were not covered under the LHWCA based upon the Supreme Court's decision in *Voehl v. Indem. Ins. Co. of North America*, wherein the Court noted the "general rule" that, "injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of

---

[83] Civ. A. No. 20-95, 2020 WL 5071115, at *7 (E.D. La. Aug. 26, 2020) (Brown, C.J.).

[84] *Id*. at *6 (*quoting* 33 U.S.C. § 902(2)) (internal quotation marks omitted).

[85] *Dempster*, Civ. A. No. 20-95, 2020 WL 5071115 at *6 (*quoting* LHWCA Procedure Manual, https://www.dol.gov/owcp/dlhwc/lsProMan.htm).  The Court notes that the quoted language can be found at the foregoing web address under "Chapter 0-0300, LHWCA Coverage (Jurisdiction) and Benefits," under Paragraph 6 "Employment-Relatedness of the 'Injury.'"

[86] Civ. A. No. 20-95, 2020 WL 5071115 at *6 (quoting *Bludworth Shipyard, Inc. v. Lira*, 700 F.2d 1046, 1049 (5th Cir. 1983)) (internal quotation marks omitted).

their employment."[87]  The *Dempster* court held that, "This case does not fall within the coming and going exception because Plaintiffs are alleging both occupational exposure to asbestos at Avondale and second-hand exposure to asbestos carried home from Avondale."[88]  The *Dempster* court concluded that, "Under Plaintiff's theory of the case, the exposure began at work and then Decedent carried some of the asbestos material home.  Therefore, the alleged injury arose out of and in the course of Decedent's employment."[89]

The Court reaches the same conclusion in this case.  In the Amended Complaint, Plaintiffs allege that Barrosse was exposed to asbestos fibers in his home and in his car after leaving work at Avondale Shipyard "due to the asbestos dust and fibers brought home on his work clothing."[90]  Plaintiffs further allege that while working as an electrician aboard ships being constructed by Avondale Shipyard from 1969 to 1977, Barrosse worked near other crafts, including insulators, who cut and applied asbestos insulation throughout the ships, which created visible asbestos dust that got on his clothing.[91]  Plaintiffs allege that Barrosse wore his dust-laden clothing home from work every day, including when he walked from the shipyard to his car, when he drove home in his car, and when he arrived home.[92]

As in *Dempster*, Plaintiffs have clearly alleged that Barrosse's off-site exposures began while he was working at Avondale Shipyard, and that he thereafter

---

[87] *Dempster*, Civ. A. No. 20-95, 2020 WL 5071115 at *7 (quoting *Voehl*, 288 U.S. 162, 165, 53 S.Ct. 380, 77 L.Ed. 676 (1933)) (internal quotation marks omitted).
[88] *Dempster*, Civ. A. No. 20-95, 2020 WL 5071115 at *7.
[89] *Id.*
[90] R. Doc. 77 at ¶ 6.
[91] *Id.* at ¶ 6(a) & (b).
[92] *Id.* at ¶ 6 (e) & (f).

carried it home from work on his clothing.  The Court rejects Plaintiffs' assertion that, "Plaintiffs do not contend that Mr. Barrosse's off-site exposures began at work, instead, as discussed below, these off-site exposures occurred each time Mr. Barrosse inhaled asbestos dust (and sustained contemporaneous injury) in his car and at home."[93]  As the Avondale Interests point out, another Section of this Court has rejected this argument, finding that such off-site exposures from asbestos carried home on an Avondale worker's clothing "is not totally unrelated to work . . . because you allege they were exposed at work and they just carried some of it home."[94]  The Court finds similarly.  Indeed, Barrosse would not have had asbestos dust to inhale, whether in his car or at home, had it not arisen out of his employment at Avondale Shipyard.  Accordingly, the Court finds that Barrosse's off-site exposures to asbestos arose out of and in the course of his employment at Avondale Shipyard, and is therefore covered by the LHWCA.

### C. LHWCA Preemption.

The Court now turns to the crux of the dispute between the parties – whether the LHWCA's exclusivity provision in 33 U.S.C. § 905(a) immunizes the Avondale Interests from tort liability and preempts Plaintiffs' negligence claims.  Under the LHWCA, "an employer, whether negligent or without fault, has a duty to pay workers' compensation to a covered employee."[95]  The exclusivity provision of the LHWCA

---

[93] R. Doc. 101 at pp. 9-10.
[94] R. Doc. 86-1 at pp. 27-28 (*citing* R. Doc. 86-8).  *See*, R. Doc. 86-8 at p. 8.
[95] *Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir. 1990) (*citing* 33 U.S.C. § 903).

provides that:

> The liability of an employer prescribed in section 904 of this title shall
> be exclusive and in place of all other liability of such employer to the
> employee, his legal representative, husband or wife, parents,
> dependents, next of kin, and anyone otherwise entitled to recover
> damages from such employer at law or in admiralty on account of such
> injury or death . . . .[96]

The Fifth Circuit has held that, "When the LHWCA applies, workers' compensation
is an employee's exclusive remedy against the employer in its capacity as an
employer."[97]

When the LHWCA was amended in 1972 to cover certain land-based injuries,
the Supreme Court in *Sun Ship, Inc. v. Pennsylvania*, addressed whether the
extension of the LHWCA's coverage displaced states from applying their own workers'
compensation schemes to land-based injuries that fell under the expanded federal
coverage.[98]  The Supreme Court held that it did not, explaining that, "the 1972
extension of federal jurisdiction supplements, rather than supplants, state
compensation law."[99]  As a result, the Supreme Court recognized a "twilight zone" of
concurrent jurisdiction between the LHWCA and state workers' compensation

---

[96] 33 U.S.C. § 905(a).

[97] *Moore*, 912 F.2d at 791 (*citing* 33 U.S.C. § 905(a)); s*ee, McLaurin v. Noble Drilling (US) Inc.*, 529
F.3d 285, 291-92 (5th Cir. 2008) ("If a maritime worker is eligible for workers' compensation from his
employer, § 904 allows him to collect compensation and § 905(a) instructs him that his remedy under
the LHWCA is his exclusive remedy against his employer.  Section 933 specifically forbids a claim
against 'the employer or a person . . . in his employ,' leaving § 904 as the only avenue of recovery
against the employer or negligent coworker.").  *See also, Dempster v. Lamorak Insurance Co.*, Civ. A.
No. 20-95, 2020 WL 5071115, at *6 (E.D. La. Aug. 26, 2020) (quoting *Moore, supra*); *Brown v.
Performance Energy Services, LLC*, Civ. A. No. 08-852, 2009 WL 152505, at *5 (E.D. La. Jan. 20, 2009)
(Africk, J.) (quoting *Moore, supra*).

[98] *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-924, 2020 WL 6059645, at *5 (E.D. La. Oct. 14,
2020) (citing *Sun Ship*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980)).

[99] *Sun Ship*, 447 U.S. at 720, 100 S.Ct. at 2436.

laws.[100]  The Court explained that concurrent jurisdiction was warranted because, "To read the 1972 amendments as compelling laborers to seek relief under two mutually exclusive remedial systems would lead to the prejudicial consequences which we described in *Davis* . . . ."[101]

Although Plaintiffs do not directly address the issue, there appears to be no genuine issue of material fact that this is a twilight zone case because the relevant asbestos exposures occurred on land at the Avondale Shipyard between 1969 and 1977.[102]  Thus, under *Sun Ship*, Barrosse could have sought compensation under Louisiana's Workers' Compensation Act, La. R.S. 23:1031, *et seq.*, which is not preempted by the LHWCA.[103]  Barrosse, however, chose not to seek compensation under Louisiana's workers' compensation regime, and asserted only state law negligence claims against the Avondale Interests.  Thus, the issue before the Court is whether the LHWCA preempts Plaintiffs' state law negligence claims for injuries that fall within the twilight zone of concurrent jurisdiction between state and federal workers' compensation schemes.

---

[100] *Sun Ship*, 447 U.S. 718, 720, 100 S.Ct. at 2435-36 (citing *Davis v. Department of Labor and Indus. Of Washington*, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942)).

[101] *Sun Ship*, 447 U.S. at 720, 100 S.Ct. at 2436 (citing *Davis*, 317 U.S. 249, 63 S.Ct. 225).

[102] *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-924, 2020 WL 6059645, at *5 (E.D. La. Oct. 14, 2020) (citing *Cobb v. Sipco Servs. & Marine, Inc.*, Civ. A. No. 95-2131, 1997 WL 159491, at *6 (E.D. La. Mar. 27, 1997) (Vance, J.)).

[103] 447 U.S. at 719-22, 100 S.Ct. at 2436-38.

This same issue was squarely before another Section of this Court in *Cobb v. Sipco Services & Marine, Inc.*[104] and the *Hulin* case.[105]   In both cases, the Court concluded that the LHWCA preempts state law tort claims in twilight zone cases. The *Hulin* court found that, "The text of the LHWCA, the intention underlying the statute, and the weight of authority make clear that plaintiff's state law tort claims are conflict preempted."[106]   The *Hulin* court reasoned that the LHWCA's exclusivity provision "evidences an unmistakable intention to embody the *quid pro quo* that defines most workmen's compensation statute [sic].   Specifically, the employee gets the benefit of no-fault compensation, and the employer enjoys immunity from tort liability for damages."[107]   The court in *Hulin* pointed out that the Supreme Court has recognized that the LHWCA "was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other."[108]   "Employers relinquish their defenses to tort actions in exchange for limited and predictable liability.   Employees accepted the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail."[109]   The *Hulin* court held that, "Allowing state law tort claims would contradict

---

[104] Civ. A. No. 95-2131, 1997 WL 159491 at *6 ("This raises the issue of the effect of section 905(a) of the LHWCA, the exclusive remedy provision, on the availability of state tort relief for a plaintiff whose injury falls within the twilight zone.") (footnote omitted).

[105] Civ. A. No. 20-924, 2020 WL 6059645 at *5 ("Thus, the question is whether the LHWCA preempts state law negligence claims for injuries in the twilight zone.")

[106] *Id*. at *6.

[107] *Id*. (quoting *Cobb*, Civ. A. No. 95-2131, 1997 WL 159491 at *7) (internal quotation and quotation marks omitted).

[108] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645 at *6 (quoting *Morrison-Knudsen Constr. Co. v. Director, OWCP,* 461 U.S. 624, 626, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983)).

[109] *Morrison-Knudsen*, 461 U.S. at 626, 103 S.Ct. at 2052 (citing *Potomac Electric Power Co. v. Director, OWCP*, 449 U.S. 268, 282 and n.24, 101 S.Ct. 509, 516 and n.24, 66 L.Ed.2d 446 (1980); H.R.Rep. No. 1767, 69th Cong., 2d Sess. 19020 (1927)).

the text of the statute and would frustrate the Act's purpose by undermining the *quid pro quo*."[110]   The court pointed out that several courts, including the Fifth Circuit, "have recognized as much."[111]

This Court reaches the same conclusion.  The Court specifically finds that allowing state law tort claims would contradict the clear text of the LHWCA, namely the exclusivity provision in 33 U.S.C. § 905(a), and would frustrate the LHWCA's purpose by undermining the *quid pro quo* that the statute guarantees to maritime employers and their employees.  Plaintiffs contend that this case is distinguishable from the preemption cases cited by the Avondale Interests (and relied upon by the *Hulin* court) because: (1) Plaintiffs are not alleging asbestos exposure after 1975 (when a tort suit was no longer an available remedy under Louisiana law); (2) Plaintiffs are not simultaneously seeking benefits under the LHWCA; and (3) Plaintiffs have not already received LHWCA benefits.[112]   The Court rejects these arguments as baseless.  To the extent Plaintiffs claim that this case is distinguishable from *Cobb* because Plaintiffs are not alleging exposure after 1975, Plaintiffs ignore

---

[110] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645, at *6.

[111] *Id.* (citing *Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083, 1085 (5th Cir. 1987) (the LHWCA bars a "state law negligence claim" because "[u]nder the LHWCA, workers compensation is the exclusive remedy for an injured employee against his employer."); *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 366-67 (5th Cir. 1995) (finding that, "[p]reemption of [a] state [tort] act is required to avoid frustration of the policies and purpose behind the LHWCA," and that, "[c]ongressional policy would be frustrated if an injured worker were allowed to collect benefits under the Act, and then sue his employer under a state statutory tort theory."); *Cobb v. Sipco Servs. & Marine, Inc.*, Civ. A. No. 95-2131, 1997 WL 159491, at *8 (E.D. La. Mar. 27, 1997) ("[A]pplication of Louisiana tort law, which plaintiff concedes is not a workmen's compensation remedy, does not further the availability of no fault compensation, and it obstructs the purposes of the LHWCA."); *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 953 (3rd Cir. 1990) (holding that, "§ 905 (a) [of the LHWCA] and the Supremacy Clause bar the Virgin Islands from imposing negligence liability on [a covered employer]," and that Congress "intended that compensation, not tort damages, were to be the primary source of relief for workplace injuries for longshoremen against their employers.").

[112] R. Doc. 101 at pp. 28-30.

the fact that the preemption analysis in *Cobb* was not based upon a change in Louisiana law in 1975.[113]  Regarding Plaintiffs' two remaining arguments, the Court agrees with United States District Judge Sarah S. Vance's assessment in *Hulin* that, "The Fifth Circuit has made clear that, if the LHWCA covers an employee's injury, his only remedy lies in workers' compensation.  Any other result would conflict with LHWCA's text and undermine the *quid pro quo* that Congress enacted."[114]  The Court rejects Plaintiffs' arguments for the same reasons.  The Court finds further support from the Fifth Circuit, which has recognized that, "Worker's compensation under the LHWCA is the exclusive remedy for an employee against his employer because the Act bars all common law tort actions against the employee."[115]

Although Plaintiffs and Westinghouse cite *Hahn v. Ross Island Sand & Gravel Co.* in support of their position that the LHWCA does not preempt state law tort claims,[116] the Court finds *Hahn* distinguishable from the facts of this case.  In *Hahn,* a *per curiam* opinion, the Supreme Court specifically recognized that, "As to cases within this 'twilight zone,' Davis, in effect, gave an injured waterfront employee an election to recover compensation under either the Longshoremen's Act or *the Workmen's Compensation Law of the State* in which the injury occurred."[117]  The Supreme Court concluded that because the petitioner's injury had occurred in this "twilight zone," he could have sought recovery under the Oregon Workmen's

---

[113] *Cobb*, Civ. A. No. 95-2131, 1997 WL 159491 at *1, 7-8.
[114] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645 at *7.
[115] *Jackson v. Total E & P USA Inc.*, 341 Fed.Appx. 85, 86 (5th Cir. 2009).
[116] R. Doc. 101 at p. 21 (citing *Hahn*, 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed. 2d 292 (1959)); R. Doc. 114 at pp. 4-5 (citing *Hahn, supra*).
[117] *Hahn*, 358 U.S. at 272, 79 S.Ct. at 267 (citing *Davis v. Dep't of Labor*, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed.246 (1942)) (emphasis added).

Compensation Act, which was not barred by the LHWCA. However, because the petitioner's employer had not obtained coverage under the state statute, the Supreme Court found that, "the automatic compensation provisions of the Oregon Workmen's Compensation Act did not apply to the claim."[118] The Supreme Court, however, pointed out that the Oregon Workmen's Compensation Act contained a provision specifying that when an employer has elected to reject the state statute's automatic compensation provisions, his injured employee may maintain a negligence action for damages. The Supreme Court acknowledged that such negligence claims would be barred by the LHWCA if the case were not within the "twilight zone" of concurrent jurisdiction. The Supreme Court concluded that, "Since this case is within the 'twilight zone,' it follows from what we held in Davis that nothing in the Longshoremen's Act or the United States Constitution prevents recovery."[119] As a result, the Supreme Court reversed the decision of the Oregon Supreme Court, which had affirmed judgment entered for the defendant notwithstanding a verdict for the plaintiff, and remanded the case to the Supreme Court of Oregon for further proceedings.

A clear reading of the *Hahn* decision shows that the Supreme Court allowed a state tort recovery for an injury within the scope of the LHWCA because it was a twilight zone case and the Oregon's worker's compensation law specifically provided for tort recovery as a sanction for an employer's failure to obtain workmen's

---

[118] *Id.*
[119] *Id.* (citing *Davis*, 317 U.S. 249, 63 S.Ct. 225).

compensation coverage.[120]  Plaintiffs and Westinghouse gloss over this point in their

briefs.[121]  As the Third Circuit pointed out in *Peter v. Hess Oil Virgin Islands Corp.*:

> The existence and function of that [negligence] liability [in *Hahn*] was
> entirely consistent with Congress's intent to ensure a seamless
> intersection between state and federal compensation coverage.  That
> negligence liability in this context is entirely consistent with the scheme
> imposed by LHWCA is apparent from Congress's inclusion of a similar
> sanction in LHWCA.[122]

As explained by another Section of this Court, "That is not the case here, where

application of Louisiana tort law, which plaintiff concedes is not a workmen's

compensation remedy, does not further the availability of no fault compensation, and

it obstructs the purposes of the LHWCA."[123]  Additionally, since *Hahn,* the Fifth

Circuit has held that the LHWCA bars an injured employee's state law negligence

claim because "Under the LHWCA, workers compensation is the exclusive remedy for

an injured employee against his employer."[124]  The Court reaches the same

conclusion.

Based on the foregoing analysis, the Court finds that the LHWCA preempts

Plaintiffs' state law negligence claims against the Avondale Interests.

### D. Due Process and Divestment of Barrosse's Tort Claim.

Plaintiffs assert in their Opposition brief that under Louisiana law, Barrosse's

cause of action accrued on the date he was exposed to asbestos, and that he acquired

---

[120] *Cobb v. Sipco Services & Marine, Inc.*, Civ. A. No. 95-2131, 1997 WL 159491, at *8 (E.D. La. Mar. 27, 1997).
[121] R. Doc. 101 at p. 21; R. Doc. 114 at pp. 4-5
[122] *Hess*, 903 F.2d 935, 953 (3d Cir. 1990).
[123] *Cobb,* Civ. A. No. 95-2131, 1997 WL 159491, at *8 (E.D. La. Mar. 27, 1997).
[124] *Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083, 1085 (5th Cir. 1987) (*citing* 33 U.S.C. §§ 904(a), 905(a), and 933(i); *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977); *Hebron v. Union Oil Co.*, 634 F.2d 245 (5th Cir. 1981)).

a vested property right at that time.[125]  Plaintiffs contend that the Avondale Interests seek to divest Plaintiffs of their vested property right through the retroactive application of the LHWCA's 1972 amendments.  Plaintiffs argue that the Court should deny the Motion because the retroactive application of the LHWCA to divest Plaintiffs of their cause of action would violate both the United States and Louisiana Constitutions.[126]  Recognizing that the *Hulin* court rejected the same argument, Plaintiffs urge the Court not to follow *Hulin* because the decision "not only effectively overrules *Davis* and *Sun Ship* in finding that the LHWCA preempts a plaintiff's state law remedies, the Court goes far beyond preemption in holding that the LHWCA *actually divests the plaintiff of a cause of action that has accrued and become a vested property right.*"[127]  Plaintiffs assert that their vested property right is protected by due process guarantees.[128]

The Avondale Interests assert that Plaintiffs' due process argument is meritless because Congress acted consistently with due process by substituting a guaranteed workers' compensation remedy for an uncertain tort remedy.[129]  The Avondale Interests point out that Judge Vance thoroughly considered and rejected Plaintiffs' divestment argument in *Hulin*.[130]  The Avondale Interests assert that federal courts apply a rational basis test to evaluate the constitutionality of laws that abolish or alter tort rights, under which such laws are constitutional unless Congress

---

[125] R. Doc. 101 at p. 31.

[126] *Id.*

[127] *Id.* (emphasis in original).

[128] *Id.* at p. 30 (citing *Anderson v. Avondale Indus., Inc.*, 2000-2799 (La. 10/16/01), 798 So.2d 93, 99).

[129] R. Doc. 124 at p. 19.

[130] *Id.* (citing *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-924, 2020 WL 6059645, at *8-9 (E.D. La. Oct. 14, 2020)).

acted in an arbitrary or irrational way.[131]  The Avondale Interests assert that the Supreme Court has held that, "[L]egislative Acts adjusting the burdens and benefits of economic life **come to the Court with a presumption of constitutionality**, and that the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."[132]  The Avondale Interests claim that Plaintiffs do not acknowledge this burden, much less attempt to meet it.  As such, the Avondale Interests argue that, as in *Hulin*, Plaintiffs have failed to carry their burden of proof on this issue.

### 1.  *Retroactivity of the LHWCA.*

In *Landgraf v. USI Film Products,* the Supreme Court recognized a "presumption against retroactive legislation" and delineated a two-part test to determine whether a statute is retroactive.[133]  Under that test, this Court must first "determine whether Congress has expressly prescribed the statute's proper reach."[134] "If Congress clearly intended the statute to be retroactive, the inquiry ends."[135]  If not, the Court must proceed to the second step and determine whether retroactive application "would impair rights a party possessed when he acted, increase a party's

---

[131] R. Doc. 124 at p. 19 (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15-18, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Hammond v. United States*, 786 F.2d 8, 13 (1st Cir. 1986); *In re TMI,* 89 F.3d 1106, 1113 (3d Cir. 1996); *In re Consolidated U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 990-91 (9th Cir. 1987)).

[132] R. Doc. 124 at p. 19 (quoting *Usery*, 428 U.S. at 15, 96 S.Ct. 2882) (internal quotation marks omitted and emphasis added by the Avondale Interests).

[133] *Terrazas-Hernandez v. Barr*, 924 F.3d 768 (5th Cir. 2019) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)) (internal quotation marks omitted).

[134] *Terrazas-Hernandez*, 924 F.3d at 772 (quoting *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483) (internal quotation marks omitted).

[135] *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-924, 2020 WL 6059645, at *7 (E.D. La. Oct. 14, 2020) (citing *Terrazas-Hernandez*, 924 F.3d at 772).

liability for past conduct, or impose new duties with respect to transactions already completed."[136]

The Court agrees with the *Hulin* court's conclusion that, "Congress expressly prescribed that the amended statute applies to latent disease claims arising from exposures occurring before the amendment dates."[137] As the *Hulin* court pointed out, Congress stated that the 1984 amendments to the LHWCA "shall be effective on the date of enactment," which was September 28, 1984, "and shall apply with respect to claims filed after such date and to claims pending on such date."[138] One of the changes made to the LHWCA in 1984 was the express adoption of the manifestation rule, which provides that, "in the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence . . . should have been aware, of the disease . . . ."[139] The Court is satisfied that these provisions, taken together, indicate that the manifestation rule applies to claims filed after September 28, 1984, regardless of whether the exposures occurred before the amendment date.[140] Thus, because the date of injury controls which version of the LHWCA applies,[141] the Court finds that this is an express

---

[136] *Terrazas-Hernandez*, 924 F.3d at 772-73 (quoting *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483) (internal quotation marks omitted).

[137] Civ. A. No. 20-924, 2020 WL 6059645 at *7.

[138] Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub. L. No. 98-426, § 28(a), 98 Stat. 1639 (September 28, 1984). *See, Hulin*, Civ. A. No. 20-924, 2020 WL 6059645 at *7 (*quoting* Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub. L. No. 98-426, § 28(a), 98 Stat. 1639, 1655).

[139] Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639.

[140] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645, at *7.

[141] *See, Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1031 (5th Cir. 1985).

recognition by Congress that the LHWCA, as amended in 1984, will apply to claims arising from exposures like those of Barrosse, which occurred before the amendments. As aptly explained by the Eleventh Circuit:

> The provision that 'the amendments made by this Act shall be effective on the date of enactment of this Act and shall apply . . . to claims *filed* after such date' (emphasis added) is obviously not necessary to apply the new law to claims *arising* after the effective date.  The only sensible reading of the provision, then, is that Congress was addressing claims that arose *before* the effective date of the statute but were filed *after* the effective date.[142]

The same rationale applies here.  There was no need for Congress to specify that the manifestation rule applies to claims "filed" after the amendment date if it applied only to claims "arising" after the amendment date.

### 2. *Due Process.*

Although Plaintiffs cite Louisiana Supreme Court cases in support of their due process argument, federal constitutional law governs this issue.[143]  According to the Fifth Circuit, "The *Erie* doctrine does not apply . . . in matters governed by the federal Constitution or by acts of Congress."[144]  The Supreme Court has held that legislative acts, including retroactive legislation, enjoy a "presumption of constitutionality."[145] In *Usery v. Turner Elkhorn Mining Co.*, the Supreme Court recognized in 1976

---

[142] *Alabama Dry Dock and Shipping Corp. v. Sowell*, 933 F.2d 1561, 1564 (11th Cir. 1991), *overruled on other grounds*, *Bath Iron Works Corp. v. Director, Office of Workers' Comp. Programs*, 506 U.S. 153, 113 S.Ct. 692, 121 L.Ed.2d 619 (1993)).

[143] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645 at *8 (citing *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363).

[144] *Hetzel*, 50 F.3d at 363 (quoting *Grantham v. Avondale Indus., Inc.*, 964 F.2d 471, 473-74 (5th Cir. 1992)).

[145] *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 727-29, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601, 610-11 (1984)); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).

that, "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."[146]  The Supreme Court further explained that, "[T]his Court long ago upheld against due process attack the competence of Congress to allocate the interlocking economic rights and duties of employers and employees upon workmen's compensation principles analogous to those enacted here, regardless of contravening arrangements between employer and employee."[147]  The Supreme Court ultimately found that, in the context of a workers' compensation law that retroactively imposed liability on coal mine operators, "the imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor the operators and the coal consumers."[148]

The Fifth Circuit has likewise recognized that the "rational basis" test is used to determine whether the retroactive application of a statute violates due process.[149] Although not addressed by the Fifth Circuit, at least three other Circuit courts have applied the "rational basis" test to determine the constitutionality of retroactive

---

[146] *Usery,* 428 U.S. at 15, 96 S.Ct. at 2892 (citing authority).
[147] *Id*. (citing authority).
[148] *Id*., 428 U.S. at 18, 96 S.Ct. at 2893.
[149] *See, Ferman v. U.S.*, 993 F.2d 485, n.5 (5th Cir. 1993) ("Outside of the tax context, the Court has held that the retroactive application of a statute must be 'arbitrary and irrational' to violate due process.  *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)").

legislation abolishing or affecting tort actions.[150]  The *Hulin* court reviewed these cases in detail and this Court adopts that analysis, finding it equally applicable to the facts of this case.[151]  Pursuant to *Usery* and the persuasive authority from other Circuit courts, this Court must determine whether Plaintiffs have carried their burden of proving that Congress acted arbitrarily and irrationally by immunizing employers covered by the LHWCA from tort claims, even if those claims already accrued under state law.  This is Plaintiffs burden to sustain.  It is clear to the Court that Plaintiffs have not met this burden.  Plaintiffs make conclusory statements in their Opposition brief that the retroactive application of the LHWCA would "divest Plaintiffs of their vested property right" and would "divest Plaintiffs of their cause of action," which "would violate both the U.S. and Louisiana Constitutions."[152]  The Court finds that these conclusory statements, without more, fail to carry Plaintiffs' burden of showing that Congress acted arbitrarily and irrationally.[153]

The Court likewise agrees with Judge Vance's determination that, "Congress had a rational basis to retroactively expand the extent of the LHWCA's coverage of exposures to hazardous materials, like asbestos, that cause long-latency occupational diseases.  The ends of the LHWCA, enacting the *quid pro quo* of workers' compensation remedies, are unquestionably legitimate."[154]  Thus, the Court finds

---

[150] *Hammond v. United States*, 786 F.2d 8, 13 (1st Cir. 1986); *In re TMI,* 89 F.3d 1106, 1113 (3d Cir. 1996); *In re Consolidated U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 990-91 (9th Cir. 1987).

[151] *Hulin v. Huntington Ingalls, Inc.*, Civ. A. No. 20-924, 2020 WL 6059645, at *8 (E.D. La. Oct. 14, 2020).

[152] R. Doc. 101 at p. 31.

[153] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645 at *9.

[154] *Id. See*, *Usery*, 428 U.S. at 15 (noting that Congress has the authority "to allocate the interlocking economic rights and duties of employers and employees upon workmen's compensation principles.");

that Congress's decision to retroactively apply the LHWCA to toxic exposures was neither irrational nor arbitrary.[155]  By enacting the manifestation rule, Congress ensured that workers like Barrosse were protected by the guarantees set out within the LHWCA.  In doing so, Congress merely substituted a no-fault remedy for the uncertain liability of common law torts.[156]  The Court finds that Plaintiffs have failed to carry their burden of proving that Congress acted in an arbitrary and irrational way and, as such, has failed to show a constitutional violation.  Accordingly, the Avondale Interests are entitled to summary judgement.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment[157] is **GRANTED** and Plaintiffs' negligence claims against Huntington Ingalls Incorporated and Lamorak Insurance Company are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, September 24, 2021.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

*Hammond*, 768 F.2d at 13 (finding that Congress had a "rational" or "legitimate" reason when it relieved private contractors from liability for tort claims).
[155] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645 at *9; *See, In re TMI*, 89 F.3d at 1113 (upholding retroactive application of a choice of law provision where it furthered the relevant act's goals of "uniformity, equity, and efficiency.").
[156] *Hulin*, Civ. A. No. 20-924, 2020 WL 6059645 at *9.
[157] R. Doc. 86.